O’Neall, J.,
delivered the opinion of the Court.
In order to enable us to pass satisfactorily upon the much contested question in this case, it will be necessary, in the first place, to ascertain the intention of Dr. Fronty, in the power conferred by his will on Mrs. Fronty, “ to make some provision, or portion, to our orphan child,” the complainant: for it must be conceded, that the intention of the testator, whenever it can be legally-ascertained, is to govern. All the rules of construction serve but to enable us to attain-this end. So in determining the extent of a power, the intention of the parties in its creation must constitute the guide. Sugden on Powers, 459. To arrive at this, the whole will must, if possible, be construed together; in order that all its parts may have effect. The different clauses, speaking .of different matters, may be construed in relation to their subjects;; and thus a difficulty may be removed, which might otherwise be insuperable.
In the fifth -clause of his will, executed in Charleston, the -testator devises and bequeaths al-1 the rest of his estate, real, and personal, in Charleston, to his wife, Mary Fronty, during her life.; -‘‘upon the special charge, however, that she will, at her own expence, keep the same in due order, .and condition, make all repairs, pay taxes, insurance, and-other necessary .expences attending the same, and -take all proper ¡steps towards the -preservation, and entertainment thereof” Then follow the -words containing the power: “ But I ¡do,-nevertheless, ompower my said wife, by her last will and testament, or other instrument signifying her intention, 'to make some provision, or por *527 tion, to our orphan child, Augustine Matilda Emma Barton, whom I recommend to her good and generous heart.”
In the succeeding clause, he directs his executors, at the death of his wife, “ to proceed to sell, and dispose of all" his “ goods, chattels, property, and estate, of all descriptions, real, and personal, aforesaid, and transmit the proceeds thereof, in the safest manner, to Ms brother, Michael, in France, &c., &c.,” and then adds, I do not think proper to make any disposition with respect to the rights, or claims, which I may have on the property of my dear wife, loft her by the will of her deceased aunt, Mrs. Loveday, as I decline interfering, in any manner, with her personal views, and dispositions, which I leave her full liber - ty to make, and execute, at her own pleasure, giving my full assent to any will, or testament sire may make, expressive of the same.”
In a codicil to his will, executed in France, where ho and his family resided at the time of his death, is-the following clause: “ I give and bequeath to Miss Augustine Emma Barton, orphan, whom, we have brought up, and lives with qs, since the year 1812, a sum of three thousand francs, as a small portion, which wall be paid to her two years after my death, and this portion will be her property, of which her husband will be obliged to give her good security for. To make up this sum, the executors of my will shall sell three of the actions that I have in the Bank of Bordeaux, and I oppose any more being sold.”
Was this legacy of three thousand francs intended as a revocation of, or substitution for the power, is the first question which naturally presents itself. I think it clear that it was not. It does not purport to be in lieu of it; and unless this appears in terms, or the last is utterly inconsistent with the former, both must stand as distinct provisions in her favor. The power to provide for the complainant, conferred on Mrs. Fronty, looked to an event, which might not take place for years subsequent to the testator’s death. In the meantime, the complainant, who was the adopted child of the testator, was to depend altogether on Mrs. Fronty. To prevent this, the testator was willing she should have “ a small portion,” immediately on his death. It is unreasonable to suppose, that he intended six hundred dollars to be all the portion which he ever intended the complainant to receive out of an estate said to be worth, at least, fifty thousand dollars. Again, the “ small portion,” given by his codicil, is out of his actions in the Bank of Bordeaux, and in which his wife was to have no interest, whatever, under his will, or codicil: whilst the power to provide for the complainant, conferred by his will, certainly applies to the property in Charleston. The legacy is a present interest, given by himself: the power he left to be executed, or not, at the discretion of his wife, *528 ^ am’ tbere^01'e> satisfied that the testator did not intend the legacy of three thousand francs as a revocation of, or substitution for, the power, and that both may stand together.
^ what property, his own, or that of his wife, did the testator intend that Mrs. Fronty should make “ some provision, or portion,” to the complainant ? The answer to this question will be obtained by recurring to his will. The power is in the clause by which he had given a life estate to his wife in all his estate, real, and personal, in Charleston; and it would seem, when the whole clause is read together, that there could be but one opinion: viz. that he intended that she should make the provision out, of this property. But it is said, that the anxiety which the testator has manifested, in that clause, for the entire preservation of tho body of his osta-.e, (hiring the life of his wife, from any charges on those who might take it after her death, is inconsistent with the power to make a provision out of it for the complainant. That is a manifestation of the prudence which a pains-taking, and economical old man, would he apt to exhibit in relation to his property, in the hands of one, who was not to have it absolutely ; hut it is no evidence that this desire to preserve it unincumbered, was not as much in reference to the provision to be made in favor of the complainant, and to increase its value in her favor, as of his residuary legatees.
The direction in the succeeding clause to his executors, to sell, at his wife’s death, all his estate, real, and personal, creates the only difficulty on this part of the case. To give these words a literal meaning, would exclude the idea that the complainant should have any provision out of his estate. The meaning of the testator is, however, to be collected from the whole of his will, and the words used must be understood in the sense in which he used, and understood them. He intended that his wife should make some provision for the complainant; and if he did not intend it to come out of his wife’s estate, it must have been from his. In addition to the evidence which the clause, in which the power is contained, furnishes, that the testator intended the provision, or portion, to be made out of his estate, other considerations lead us inevitably to that conclusion. In the last clause of his will, which is the residuary one, he disclaims, in express terms, any intention to dispose of her estate. For the property left her by the will of Mrs. Loveday was the only, estate which she had. In. relation to that, after declining to make any disposition of it, he assigns his reason, “as I decline inlerfering'in any manner with her personal views and dispositions.” If he had supposed he had charged her to provide for the complainant out of it, he would have directly interfered with her free disposition of it, and the reason assigned would- *529 have been utterly untrue. But if he intended the provision to be made out of his own estate, then he had not, in any shape, interfered with his wife’s personal views and dispositions. From the words, therefore, which he has used himself, the best exponent of his intentions, we must conclude that he did not intend to direct his wife to provide, out of her own estate, fór the complainant. But independent of this view, it cannot be supposed that he thought it necessary to empower his wife to rpake a provision out of her own estate, if she thought proper so to do. Every one has the right to devise his own property to any one he may please; but this right of disposition does not extend to the property of another. This is known to the ignorant, as well as the learned; and it is Pot to be supposed that the testator thought any power from him was necessary to enable his wife to devise her own estate: more especially when he disclaims any intention to control her in the disposition of it. Being satisfied that the power given to Mrs. Fronty, was intended, by the testator, to- be applied to, and exercised by a disposition of, his own estate, the direction to his executors to sell, at her death, all his real and personal estate, must be understood to apply to all of it, which she might leave undisposed of by an appointment in favor of the complainant. This satisfies both the intention, and the words of the will. For, “all of his estate, real, and personal, at her death,” is the property which she did not appoint in favor of Miss Fronty. This is all which then belonged to him. The property devised to her by Mrs. Fronty, is no longer his property. He himself, by creating the power, has parted with his interest in whatever passes by its execution.
Having arrived at the conclusion, that Mrs. Fronty was authorized, under the will of Dr. Fronty, to make “some provision, or portion,” for the complainant, out of his estate, it remains to be examined, whether the appointment actually made, can be sustained. Mrs. Fronty’s will devises to the complainant, about two thirds of the property in Charleston, leaving the other third to go to the residuary legatees, under Dr. Fronty’s will.
Powers may be general, or limited. In the execution of a general power, there can be no rule, but the discretion of the party to whom it is confided. In a limited one, the limitations contained in it constitute the rule, by which it is to be executed. In the former, no Court can undertake to control that, which the party creating the power intended to leave to the honesty, good faith, and discretion of the person, to whom he confided it. In the latter, the Courts do no more than execute the intention of the party by whom it is created, by declaring the execution of the power, contrary to the limitations contained in it, void.
*530 / ^octr^ne illusory appointments, which, in England, hat? /been carried to a most unwarrantable length, and is reprobated by the wisest judges, is, nevertheless predicated on the ground, that the power ^ven ^as not ^eerL exeOTJed according to the intention of the testator. This, if it had been confined to plain and palpable violations of the intention, as indicated by the words of the power, could have produced no conflict between Law andEquity. But when it is attempted to control a discretionary power of distribution among children, by saying that each must receive a substantial part, it is to substitute the ■•discretion of the Court for the discretion of the person, to whom the ipower is confided. \ It is creating an equity against, and above the law, when it is our duty to follow, and obey the law: to declare it, ¡not to make it.
But the doctrine of illusory appointments has nothing to do with this case. That applies only where there is an obligation to appoint something to each of several objects of the power, and a merely illusory share is given to some one, or more of them. The complaint here is, that too much, not too little, has been done for the complainant. The power executed in her favor, looks only toiler. No other person is interested in its execution. The interests of others may be abridged by its being executed, but they cannot complain, if it exists, as we have already seen it does, unless some limitation, contained in it, has been exceeded. Does’ the execution exceed the power ? That is the only question. If it does, then it follows, that the complainant cannot take any thing under it.
There are three modes in which a power may be exceeded: 1st injhe objects; 2nd. in the interests; or 3rd. in the conditions annexed to the gift. Sug. Pow. 533. In relation to the first, the objects, or person, in whose favor the power is created, and the third, as to the conditions, there is no objection to the execution of the power in this case: it is as to the second, the interests, or rather the value, of the “ provision” made by the will of Mrs. Fronty, in favor of the complainant, that the execution of the power is alleged to be excessive.
To sustain this objection, it must appear, that more of the estate of the testator has been appointed to the complainant, than his will authorized. If this could be clearly ascertained, the appointment of the excess would be void. But if it is excessive, and the boundaries between the execution and the excess are not distinguishable, it would, as Mr. Sugden observes, be altogether bad. Sug. Pow. 549. So that really the question, now to be decided, is whether the complainant is to receive the whole provision made for her by the will of Mrs. Fronty, out of the estate of Dr. Fronty, or nothing. For it is in vain to say, that any mode exists, by which we can ascertain, how *531 much she ought to receive from his estate, if the will of Mrs. Fronty is not to be our guide. Every .one would say she ought to receive something; but the opinion of each would ^fix that something according to his own standard of right and wrong. “ In the multitude of counsellors there is safety;” but it is seldom that certainty and precision, as to either amount, value, or truth,' are obtained from a multitude of opinions.
What is the provision, or portion, which the will of Dr. Fronty authorized to be made? Thé will must answer the question; for it is to that we must look for the limitations of the power, if there are any. It is, “ but I do nevertheless empower my said wife, by her last will and testament, or other instrument signifying her intention, to make some provision, or portion, to our orphan child, Augustine Matilda Emma Barton, whom I recommend to her good and generous heart” The true question on this' clause is, has the testator left the nature, and amount of the provision, to the discretion of his wife ? If he has, then his confidence in her must be held to have authorized any disposition in favor of the complainant, be it much, or little. For after all that has been said, and written, on the subject of the execution of powers, the only principle which can be safely extracted from the cases is, that where a power of appointment is to be exercised according to the discretion ,of the person to whom it is committed, no appointment, however unjust and unreasonable it may seem, can be regarded as excessive; but where any 'limitation is placed to the exercise of his discretion, the Courts will control the execution of the power.
It is said here, that some provision, or portion, did not authorize a devise to the complainant, of two thirds of the testator’s estate. Why? It is, in the word’s of the will, some provision, or portion. It is not the whole estate. If it was, there would be some plausibility in the argument, from the residuary clause; but I am not sure, that an appointment of even'the 'whole estate, would have been excessive. There is nothing in the power which restricts the gift to be made, in amount: and it is apparent, that the testator did not intend that his wife should dole out a scanty pittance, with a niggardly hand, to the complainant; for he recommends her to the kind and generous heart of his wife. And what was to be expected from the kind and generous heart of a childless woman, to her adopted daughter ? Could less be expected, than that she would act a mother’s part towards her? Such would be the ordinary calculation of every one acquainted with human nature.
The provision is liberal, but I cannot say that it is excessive. I can see nothing which enables me to say, that the testator did not in» *532 tend that two-thirds of his estate should be given to the complainant: and if the intention to restrict the donation cannot be ascertained, it is manifest that the testator did not intend that it should be restricted; but that his wife should provide for her, as she might think best, and most suitable to her wants, and prospects.
It will be only necessary to refer to a few, out of the many, cases on this subject, to shew, that when, the testator leaves the appoint-' ment to be made to the discretion of the person who is to make it, any appointment which he makes, must be sustained.
The case of Cook and Wife v. Farrand, and others, 7 Taunt. 122, approaches more nearly to this case, than any other, That is, it is true, the opinion of a Court of Law, but it was on a case sent from Chancery for the opinion of the judges. John Sanders devised “ all the residue of what he should die possessed of, or in expectancy, of what nature, or kind soever, in that, or any other country, to his wife, E. Sanders, for her natural life, reserving to her full power to will away any part, or proportion, of his said residue, at her decease; and after that period, he bequeathed the said residue, and remainder, of what was undisposed of by his wife, to his daughter, Sophia Cook, (the plaintiff,) to her, and the heirs of her body forever.” The widow E. Sanders, by her will, appointed the whole residue to Far-rand, Cathcart, and Oldershaw, in exclusion of the plaintiff; and the Court held that the power was well executed. In that case it was as manifest, as it is in this, that the testator looked only to an appointment of some part of his estate by his widow; but still the power was general, and her discretion unlimited by any thing, which could enable the Court to say, that the testator intended that the power should not be executed, beyond such a part of the estate. As was well said, in the argument of this case, the gift of the residue for life, with the power of disposing of any part of it, turned the life estate into an absolute one, and hence the devise was good. So in the case in hand; the devise to Mrs. Fronty, for life, is of the residue of his property in Charleston, with the power of disposing of some part of it, with only one restriction, that it should be in favor of the complainant. This did not make her legal estate absolute for all purposes, but it made her estate for the purpose of the power absolute, and the analogy between the cases, is, in this respect, complete.
In the case of Wollen v. Tanner, 5 Ves. 218, James Winter, by bond, bound his exeéutors to pay £600, after his decease, unto and among all such children of Susannah Wollen, in such parts, shares, and portions, manner, and form, as the said James Winter should by deed or deeds, writing or writings, or by his will, appoint, and in default of appointment, then unto, and among, all the children of Su- *533 Sannah who might survive the said James. James Winter, by his will, gave the whole £600, to Thomas Wollen, one of the children of Susannah, and it was'held by the Lord Chancellor to be a good appointment. The words “ all such children,” reserved to himself the discretionary power of selecting, from among them, the ’object, or objects, of his bounty. It would have seemed, that at least more than one ought to have been selected, to have satisfied the words; but there was a right to select, and no rule by-which its exercise could be regulated: and hence, being wholly arbitrary, and discretionary, the Court could not declare the appointment to be bad. The reason of that case touches this. For here some provision is to be made. How much ? Who can tell 1 The person to whom the testator confided the power, can alone answer the question, by her appointment. For it is wholly discretionary as to the amount, and her opinion of the proper portion of his estate to constitute that provision, is more apt to coincide with what were the testator’s wishes, than any conjecture which any other human being can make.
The case of Long v. Long, 5 Ves. 445, was the case of a power under marriage articles. Coombe Farm was, according to their terms, purchased, and settled to the use of the husband, for life; remainder to the use of the wife, for life, for her jointure, "and in bar of her dower; remainder to the first and other sons in tail male; remainder to the daughters, as tenants in common; remainder to the right heirs of the husband: with a power to charge the premises with the payment of such sums of money as he might, by deed, or writing, or by will, appoint in favor of the younger children of the marriage^ He devised Coombe Farm, to be sold, and appointed the money among his younger children, excluding the eldest son. The power to charge, and appoint, was held well executed by the sale, and appointment of. the proceeds; for the power to charge was unlimited in amount, and might have been exercised to the full extent of the fee simple value: and a sale was, in effect, a charge to this extent. In the appointment of the proceeds, the discretion of the father was not restricted, in either the amount, or the objects. His right of selection among the younger children was not limited; and as to his eldest son, he could not complain of an act of the father, which, although it conveyed the estate from him, was, in effect, the same as a charge to the fee simple value, which the power gave the father the authority to make.
The correctness of this decision is questioned by Mr. Sugden, on the authority of Tankerville v. Coke, Mosely, 146; and there is certainly some discrepancy between the two cases: but still, I see no reason to find fault with the case of Long v. Long. It is decided upon what seems to me the correct principle, that, when a power is discre *534 tíonaíy as 10 ^le objects, and interests, and without condition, the appointment is good. In Tankerville v. Coke, Mr. Baron Comyn states what I should not be willing to admit, in the general terms usec^: “ I allow,” says he, “ that this Court will take care a general power be executed in a reasonable manner, but it will not interpose if the execution is not apparently unreasonable.” If, by a reasonable manner is meant, that the discretion of the Court is to be substituted for .that of the person making the appointment, under a general pow: er, I deny it to be law. The rule is, that if any boundary is fixed to the exercise of the power, or can be ascertained, by a reasonable construction of the words, to have been intended, then the execution must conform to it, otherwise Equity, as well as Law, must hold it well executed.
In Bax v. Whitbread, 16 Ves. 24, Lord Eldon, while sustaining the doctrine of illusory appointments, yet admits, that when there is a discretion allowed to the person who is to execute the power, the Court ought not to interfere. Pie observes: “ with regard to the quotation, in the case of Butcher v. Butcher, 9 Ves. 382, which I take to be Lord Nottingham’s words, from his own manuscript, speaking with all due humility, I should have found it very difficult, construing that will, to say the wife was not intrusted with a discretion, because there was no convenience in trusting her ; the only question in judicature ■being, not wpon the convenience, but whether she was intrusted with the power. As I read the will, whether convenient, or not, she was intrusted with the power; and speaking with the same humility, I could not have declared, in judgment, that it seemed to me very ápparent that the true meaning was an equal provision.” Under the will, in the case before us, the wife has the power to make “ some provision, or portion,” for the complainant; and as to the nature, and amount of it, she was intrusted with a discretion, which, having been exercised, we have no right to interfere with it. “ She was intrusted with the power,” and has executed it, and the appointment must be held to be good.
■ This dispenses with the necessity of considering the question, whether the- City stock, and Scotch Church bond, are the estate of Mrs. Fronty. Whether her’s, or her husband’s,. is perfectly immaterial: they will, in either event, go to the complainant, under her will, according to-the view taken of the power of appointment.
Her power of appointment is not affected by the contract in France with her brother-in-law, Mr. Fronty. Her rights, under her husband’s will, were intended to be neither increased, nor diminished by it.
In relation to commissions, I concur with the Chancellor. The bequest to Mrs. Fronty, carried all the rest of the testator’s property *535 in Charleston, to her, in specie. Upon his executors assenting tp the legacy to her, the stock vested in her, and the executors had no right to receive the dividends, as executors, afterwards. At her death, her will carried to Miss Fronty the property bequeathed to her, and her executors assenting to the legacy, it vested in her. She alone was intitled to receive the rents, dividends, interest, or principal of the bond. The executors of Dr. Fronty, having received for another, that which, as executors, they had no right to receive, can give them no title to commissions.
It is, therefore, ordered, and decreed, that Chancellor Johnston’s decree be affirmed.
Johnson, J., and Harper, J., concurred.

Decree affirmed.